CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV /0, 2010
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| WACHOVIA BANK, NATIONAL ASSOCIATION, | ) ) ) |
| Plaintiff, | ) Civil Action No. 5:09cv00112 ) ) |
| v. | ) MEMORANDUM OPINION ) |
| PRESTON LAKE HOMES, LLC, et al., | ) ) ) |
| Defendants. | ) By: Samuel G. Wilson ) United States District Judge |

This is an action by plaintiff Wachovia Bank, National Association ("Wachovia"), the lender, for breach of a loan agreement against defendants Preston Lake Homes, LLC, the borrower, and Richard J. Hine ("Hine"), the guarantor, (defendants collectively referred to as "Preston Lake") seeking damages and the appointment of a receiver of Preston Lake's property pending foreclosure.[1] Preston Lake has counterclaimed, alleging that Wachovia breached the loan agreement in various ways, breached fiduciary duties owed to Preston Lake, and committed fraud. As a result, Preston Lake claims that it is entitled to consequential and punitive damages. Wachovia has moved to dismiss Preston Lake's counterclaims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the court finds that all of Preston Lake's contract claims, except its claim that Wachovia breached the lending agreement by failing to renew the agreement, survive Wachovia's motion. However, the court finds that

---

[1] Wachovia is a national banking association with its principal place of business in North Carolina, and Preston Lake Homes, LLC, is a limited liability company organized under the laws of the Commonwealth of Virginia with its principal place of business in Harrisonburg, Virginia. The company has two members, and neither of those members is a citizen of North Carolina. Accordingly there is complete diversity, and jurisdiction exists pursuant to 28 U.S.C. § 1332.

Preston Lake has not stated plausible claims for breach of fiduciary duties or fraud, and that Preston Lake has contractually waived its right to seek consequential and punitive damages.

## I.

The following facts are taken from the allegations in Preston Lake's Amended Counterclaim and the documents attached to that pleading.[2] For the limited purpose of evaluating Preston Lake's counterclaims in the context of a Rule 12(b)(6) motion to dismiss, these factual allegations are accepted as true. Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

The events giving rise to Preston Lake's counterclaims began on July 10, 2006, when Wachovia agreed to finance Preston Lake's new real estate development project in Harrisonburg, Virginia. On that date, Preston Lake and Wachovia each signed two separate lending agreements ("Loan Agreements"), referred to separately by the parties as the Acquisition and Development Loan Agreement ("A&D Agreement") and the Construction Loan Agreement ("Construction Agreement"). Under the Loan Agreements, Wachovia agreed to extend more than $20 million in credit to Preston Lake. Additionally, Hine signed "Unconditional Guaranty" agreements for these loans, making him personally liable in the event Preston Lake defaulted.

Despite the understanding that the development would take five to seven years to complete, Wachovia and Preston Lake agreed that the Construction Agreement would only have a two year term and would expire in July 2008, unless Wachovia exercised its discretion to renew the loan for an additional term. These types of construction loans are routinely and customarily

---

[2] Courts may consider documents attached to the complaint, or documents relied on in the complaint by the claimant, for purposes of deciding a Rule 12(b)(6) motion. See Darcangelo v. Verizon Commc'ns, Inc., 292 F.3d 181, 195 n.5 (4th Cir. 2002).

renewed in the construction industry. However, the loan agreement filed with Preston Lake's complaint specifically provides: "*At the Bank's sole discretion*, so long as Borrower is not in default, has made the minimum principal curtailment payments on the Loan, and the financial condition of the Borrower, Guarantor, and the Preston Lakes project remain satisfactory, a 6 or 12 month extension *may* be provided." (Defs.' Am. Countercl., Ex. 1 (emphasis added).)

After the Loan Agreements were signed, Rockingham County (the location of the development) required Preston Lake to post a $2.5 million letter of credit in order to move forward with infrastructure improvements necessary for the project. Wachovia agreed to provide this letter of credit, and Wachovia charged this $2.5 million against the amount of funding otherwise available to Preston Lake under the A&D Agreement. Preston Lake claims that the terms of the A&D Agreement prohibited Wachovia from charging this letter of credit against the funds available under that agreement.

On January 11, 2007, the parties executed a modification of the A&D Agreement. Under this modification, Wachovia agreed to lend more than $3 million in additional funds so that Preston Lake could construct more extensive improvements to the land than the parties had originally contemplated. However, the explicit terms of the modification did not extend the repayment date. The original agreement explicitly required that Preston Lake make a curtailment payment of not less than $4.75 million on or before March 31, 2008, and the modification noted that all of the terms and conditions not explicitly addressed in the terms of the modification "shall remain unchanged and in full force and effect." (Pl.'s Compl., Ex. A at 8, 16.) Despite this language, Preston Lake's counterclaim asserts that both parties understood that making these

3

additional improvements would take additional time, and thus Preston Lake claims that the parties implicitly extended the repayment date.

According to Preston Lake's counterclaim, Wachovia failed to strictly comply with the express terms of the Loan Agreements in other ways throughout 2007. For example, Wachovia regularly waived late fees and granted Preston Lake extensions of time on payments. Preston Lake claims that these actions further indicate that the parties modified the Loan Agreements in ways not specifically enumerated by the terms of the written modification.

A year later, in January 2008, Preston Lake approached Wachovia seeking an extension and renewal of the Construction Agreement, which would expire in July. During these negotiations, Wachovia's agents expressed confidence that the parties could work out such an extension. Preston Lake spent an additional $1 million improving the development's infrastructure, rather than preparing to make loan repayments, in reliance on Wachovia's representations during these conversations.

On March 31, 2008, the first scheduled payment under the A&D Agreement became due. Preston Lake failed to make this payment; however, it claims that the repayment schedule had been pushed back as a result of the January 11, 2007, loan modification. Wachovia did not demand payment or otherwise notify Preston Lake that Wachovia viewed Preston Lake as being in default. However, after the March 31, 2008, deadline had passed, Wachovia ceased to fully fund Preston Lake's disbursement requests under the Loan Agreements.

At approximately the same time that Preston Lake missed the first payment deadline under the A&D Agreement, Wachovia began exhibiting signs of severe financial instability. Ultimately, Wachovia's financial troubles worsened and led to the bank's near collapse and

subsequent merger with Wells Fargo in early 2009. According to Preston Lake's complaint, this financial turmoil, and not Preston Lake's failure to make its first scheduled loan payment, prompted Wachovia's failure to provide further funding under the Loan Agreements.

During the period between March 31, 2008, and the end of 2009, Wachovia continued to promise Preston Lake that Wachovia would agree to extend and renew the Loan Agreements. In reliance on these representations, Preston Lake did not seek alternative sources of financing for its project. According to Preston Lake's complaint, Wachovia never intended to renew or extend the Loan Agreements, but instead made these representations to encourage Preston Lake to keep making regular payments on the loans. Wachovia sent its first written notice of default in February 2009, but did not formally demand payment in full until ten months later on December 1, 2009.

Preston Lake's complaint asserts that Wachovia's officers exercised control over the day-to-day management of the development project by suggesting that Preston Lake take specific actions after Preston Lake missed the first curtailment payment in March 2008. For example, according to Preston Lake, one of Wachovia's employees counseled Preston Lake to cut costs, adopt marketing strategies, make certain funding decisions and complete construction on individual housing units in a specific order. Preston Lake claims Wachovia had implicitly become Preston Lake's partner with the accompanying fiduciary duties a partnership entails.

Preston Lake cites two additional specific instances of Wachovia's conduct in support of Preston Lake's breach of contract claims. The first occurred in October 2008, when Wachovia transferred a $300,000 balance from one loan to another. According to Preston Lake's complaint, this transfer caused an accounting discrepancy that took a great deal of time for the

parties to discover and correct. Preston Lake claims that the Loan Agreements did not permit Wachovia to make the transfer, and that Wachovia used the resulting accounting discrepancy as an excuse to delay funding Preston Lake's disbursement requests.

The second instance occurred in November 2009, after one of Preston Lake's subcontractors brought suit against Preston Lake seeking payment for construction work that already had been completed. Preston Lake negotiated to settle the case for $350,000, and requested that Wachovia advance this sum (plus an additional $50,000 to cover Preston Lake's legal fees) as the Loan Agreements, according to Preston Lake, required. After allegedly orally agreeing to fund the settlement, however, Wachovia reneged and settled with the subcontractor directly.

Preston Lake claims that Wachovia's actions amount to multiple breaches of contract, breaches of fiduciary duties, and constructive and actual fraud.

## II.

The resolution of nearly all of Preston Lake's breach of contract counterclaims depends on whether Preston Lake defaulted in its payments under the Loan Agreements, and if so, whether Wachovia breached the Loan Agreements prior to the default. Preston Lake's fifty-six page Amended Counterclaim provides extensive factual allegations that plausibly support these claims,[3] and accordingly the court overrules Wachovia's motions to dismiss them.[4] However,

---

[3] These claims include Preston Lake's claim that Wachovia: (1) failed to fund and/or timely fund requisitions under the A&D Agreement; (2) failed to timely fund the settlement with Preston Lake's subcontractor as required by the Loan Agreements; (3) failed to permit Preston Lake to re-borrow funds under the A&D Agreement in violation of that Agreement's express terms; (4) failed to provide Preston Lake with written notice of default and an opportunity to cure; (5) failed to fund requisition requests under the Construction Agreement; (6) improperly applied a $2.5 million letter of credit with Rockingham County against the A&D Agreement,

Preston Lake's claim that Wachovia breached the Loan Agreements by failing to exercise its option to renew or extend those Agreements[5] stands on different footing. Wachovia had no duty under Virginia law to exercise good faith in renewing the contract. Alternatively, to the extent Preston Lake claims that the parties implicitly agreed that the Loan Agreements would span the entire expected life of the development project, this type of implicit modification runs afoul of the Virginia statute of frauds. For these reasons, the court grants Wachovia's motion to dismiss this claim.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The facts alleged in the complaint must be sufficient to support a plausible claim that a party's actions violated the standards of conduct provided for by the applicable law. However, a complaint need not plead "specific evidence or extra facts beyond what is needed to make the claim plausible." Arista Records LLC v. Doe, 604 F.3d 110, 120-21 (2d Cir. 2010). "'Plausibility' in this context

---

thereby delaying funding and wrongfully reducing the amount of available funds; (7) wrongfully transferred funds between the different lines of credit; and (8) failed to keep a fair and accurate accounting of the loans and provide that accounting to Preston Lake. (Defs.' Am. Countercl. ¶ 192(i)-(viii).)

[4] For these same reasons, the court denies Wachovia's motion to dismiss Hine's counterclaims regarding the alleged breach of the guaranty agreement, as these claims appear to share the same issues of disputed facts as the other breach of contract claims.

[5] (Defs.' Am. Countercl. ¶ 192(ix).)

does not imply that the district court should decide whose version [of the facts] to believe, or which version is more likely than not." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

Preston Lake's amended counterclaim states that the Construction Agreement and the A&D Agreement were set to expire in July 2008 and July 2009, respectively, unless they were renewed or extended. Yet, despite the Loan Agreements' clear language that the loans would be renewed or extended only "[a]t the Bank's sole discretion." (Defs.' Am. Countercl., Ex. 1.) Preston Lake claims that Wachovia had an obligation to exercise this discretion in good faith and in accordance with the parties' mutual understanding that the project would take longer to complete than the stated loan term. Wachovia counters that Virginia law requires that any modification of the plain language of the Loan Agreements be in writing in order to be enforceable. See VA. CODE ANN. § 11-2(9) (requiring written evidence of any agreement to lend money in excess of $25,000).

"[A] party may not exercise contractual discretion in bad faith, even when such discretion is vested in that party." Va. Vermiculite, Ltd. v. W.R. Grace & Co., 156 F.3d 535, 542 (4th Cir. 1998) (applying Virginia law); see also Charles E. Brauer Co. v. Nationsbank of Va., N.A., 251 Va. 28, 33 (1996). However, this duty of good faith only applies to a party's performance of its duties under an existing contract. See A & E Supply Co. v. Nationwide Mut. Fire Ins. Co., 798 F.2d 669, 676 (4th Cir. 1986) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981)). The duty of good faith cannot be extended to compel a party to exercise an option or enter into an entirely new contract at some point in the future. See Hart v. Hart, 544 S.E. 2d 366, 373 (Va. Ct. App. 2001); see also E. ALLEN FARNSWORTH, CONTRACTS § 3.23 (4th ed. 2004) ("Like any other

8

offer, an option imposes no duty on the offeree. The offeree has unfettered discretion to either accept the offer or not.").

Had Wachovia exercised its discretion to renew the Loan Agreements, Wachovia would have been entering into a new contract for a new term. Wachovia's discretion did not relate to whether it would render performance under a particular term of the existing contract; the renewal term gave Wachovia the option to enter into an entirely new contract. Yet, the implication of Preston Lake's position is that Wachovia must justify its refusal to exercise the option. This interpretation of the implied duty of good faith goes too far. Even if Preston Lake's allegations are true, and Wachovia declined to renew the Loan Agreements because of Wachovia's rapidly deteriorating financial situation and not Preston Lake's alleged default, that conduct did not breach the terms of the contract. The contract allowed Wachovia to freely decline the option, regardless of its rationale. In negotiating the contract, Wachovia gave itself the "sole discretion" to decide whether to renew the contract. Allowing the implied duty of good faith to defeat this express and bargained for term would defeat the clearly stated expectations of the parties. See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 223 (2005) ("Courts generally should not tinker with a finely drawn and precise contract entered into by experienced business people that regulates their financial affairs.")

Virginia's statute of frauds also prevents Preston Lake from claiming an implicit modification of the Loan Agreements. See VA. CODE ANN. § 11-2(9). "The purposes of Code § 11-2 are to provide reliable evidence of the existence and terms of certain types of contracts and to reduce the likelihood that contracts within the scope of this statute can be created or altered by acts of perjury or fraud." Lindsay v. McEnearney Assocs., Inc., 260 Va. 48, 53 (2000). If, as

9

Preston Lake contends, both parties understood that the development project would take five to seven years to complete and that Wachovia intended to commit to funding the project throughout that period, the parties were obligated to memorialize this understanding in the written agreement. The parties did not do so. Instead, the parties expressly agreed that Construction and A&D Agreements would expire in July 2008 and July 2009, respectively. Virginia law prevents Preston Lake from now claiming that the explicit terms of the Loan Agreements did not reflect the parties' true intentions at the time of contract formation, or that the parties later implicitly modified that contract.

For the foregoing reasons, Preston Lake has failed to set forth facts that state a plausible claim for relief as to its breach of contract counterclaim relating to Wachovia's failure to renew the Loan Agreements. Accordingly, the court grants Wachovia's motion to dismiss this claim.

### III.

Preston Lake alleges that Wachovia exercised such a high degree of control over Preston Lake's affairs that a partnership between the parties arose, and that Wachovia's subsequent conduct violated the resulting duties imposed by this fiduciary relationship. Because Preston Lake has not alleged facts that could plausibly establish the existence of a partnership or any other fiduciary relationship, the court grants Wachovia's motion to dismiss this counterclaim.

Virginia follows the majority rule that ordinarily, "the existence of the debtor-creditor relationship does not create a privilege or right of a fiduciary character." Daisy J., Inc. v. First Bank & Trust Co., 1998 WL 888946, at *4 (Va. Cir. Ct. Oct. 30, 1998); cf. Deal's Adm'r v. Merchs.' & Mechs.' Savings Bank, 91 S.E. 135, 135 (Va. 1917) ("The relation between a bank and a depositor is that of debtor and creditor. The deposit creates an ordinary debt, not a

10

privilege or right of a fiduciary character."); Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n, 731 F.2d 112, 122 (2d Cir. 1984) ("A correspondent-bank relationship, standing alone, does not create an agency relationship."). Virginia courts have noted that only in rare circumstances will a debtor-creditor relationship meet the requirements necessary to form a fiduciary relationship. See Daisy J., 1990 WL 888946, at *4.

In determining whether these rare circumstances exist, other courts[6] have looked to whether the lender exercised "substantial control over the debtor's business affairs." Blue Line Coal Co. v. Equibank, 683 F. Supp. 493, 496 (E.D. Pa. 1988) (citing NCNB Nat'l Bank of N.C. v. Tiller, 814 F.2d 931, 936 (4th Cir. 1987)) (internal quotation marks omitted). According to these cases, "control" exists when the lender is involved in the day-to-day management of the borrower, and has the "ability to compel the borrower to engage in unusual transactions." Temp-Way Corp. v. Cont'l Bank, 139 B.R. 299, 318 (Bankr. E.D. Pa. 1992); see also Tiller, 814 F.2d at 936, overruled on other grounds by Busby v. Crown Supply, Inc., 896 F.2d 833 (4th Cir. 1990). Essentially, courts look to see whether the borrower has effectively become the "alter-ego" of the lender. In re Heartland Chems., 136 B.R. 503, 517 (Bankr. C.D. Ill. 1992); see also Matter of EDC, Inc., 930 F.2d 1275, 1282 (7th Cir. 1991) (no fiduciary duty created where lender dealt with a debtor at "arm's length"); Rajala v. Allied Corp., 919 F.2d 610, 624 (10th Cir. 1990) (no fiduciary duty implied when there was no evidence that the supplier did not have any influence

---

[6] In the absence of clearly established state law, the court "must apply what [it] find[s] to be the state law after giving 'proper regard' to relevant rulings of other courts of the State. In this respect, it may be said to be, in effect, sitting as a state court." Comm'r of Internal Revenue v. Bosch, 387 U.S. 456, 465 (1967).

11

over its customer other than that which suppliers and customers normally have over each other in the marketplace).

Preston Lake contends that Wachovia exercised substantial control by advising Preston Lake to: construct residential units in a particular order; pay specific subcontractors with particular funds; conduct certain types of advertising and marketing; make cost-cutting personnel decisions; and provide Wachovia with a list of open accounts payable. Taken together, however, these facts are not sufficient to form a fiduciary relationship between the lender and the borrower. Preston Lake does not contend that Wachovia supplanted Preston Lake's officers with its own, or took ownership or possession of Preston Lake's assets. Preston Lake does not allege that Wachovia had means of enforcing this control beyond withholding of funds in accordance with the Loan Agreements - an action that is commonly held to be normal and necessary for creditors. See Tiller, 814 F.2d at 936. At all times, Preston Lake had the option to discontinue its arrangement with Wachovia and pursue alternative financing. Preston Lake and Hine are sophisticated parties who do not claim that they lacked the sophistication to understand their obligations under the Loan Agreements. See Gold Standard, Inc. v. Montagu Fin. Ltd., 1992 WL 78086, at *2 (10th Cir. Apr. 14, 1992) (noting that a great disparity in sophistication or bargaining power may lead to the creation of a fiduciary relationship in some circumstances). Preston Lake's allegations, therefore, do not support a plausible claim that the parties established a fiduciary relationship under Virginia law.

As an alternative ground for the creation of a fiduciary relationship, Preston Lake asserts that the parties formed a joint venture. Preston Lake claims that, assuming the parties had not implicitly renewed the Loan Agreements, the only possible way to characterize the continued

relationship between the parties after the expiration of the Loan Agreements is as a joint venture. However, the existence of a joint venture depends on an agreement between the parties to jointly share the profits or losses of a specific business undertaking. See PGI, Inc. v. Rathe Prods., Inc., 265 Va. 334, 340 (2003). Preston Lake has not alleged facts from which the court could infer that the parties agreed to share the profits and losses from the project in this manner. Lenders are entitled to seek the recovery of their collateral plus the agreed upon interest rate; there is no allegation that Wachovia agreed to share any of Preston Lake's profits, except indirectly to the extent that those profits would allow Preston Lake to make interest payments as contemplated by the Loan Agreements. Wachovia's conduct in continuing to interact with Preston Lake after the expiration of the Loan Agreements is entirely consistent with its position as a creditor seeking to recoup its investment from a debtor. Therefore, Preston Lake has not adequately supported its allegation that the parties formed an express or implied joint venture.

For the reasons stated above, the court finds that Preston Lake has not alleged facts that plausibly support its claim that Wachovia owed Preston Lake any fiduciary duties.

## IV.

Preston Lake alleges that Wachovia also committed both constructive and actual fraud in making several false representations. Applying the heightened pleading standards required of fraud claims under Rule 9(b),[7] the court finds that Preston Lake has failed to allege plausible fraud claims.

---

[7] Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

To state a claim for actual fraud, Preston Lake must show: "1) a false representation of material fact; 2) intentionally and knowingly made with the intent to mislead; 3) reliance by the misled party; and 4) damages resulting from such reliance." Worldcom, Inc. v. Boyne, 68 Fed. App'x 447, 453 (4th Cir. 2003) (citing Winn v. Aleda Constr. Co., 227 Va. 304, 308 (1984)). Constructive fraud requires that Preston Lake demonstrate the same elements, "except that the false representation can be made innocently or negligently." Id. When a tort claim such as fraud is brought in a breach contract case, a court must ensure that the tort claim stems from the defendant's breach of a common law duty of care independent of any duties owed to the plaintiff under the contract. Dunn Constr. Co. v. Cloney, 278 Va. 260, 267 (2009) (quoting Foreign Mission Bd. v. Wade, 242 Va. 234, 241 (1991)). This rule prevents every breach of contract claim from also serving as the basis of a separate tort claim. Id.

Preston Lake alleges that Wachovia made the following negligent or intentional misrepresentations: the A&D Agreement did not provide Preston Lake with a revolving line of credit; Wachovia intended to provide Preston Lake with continued funding; Wachovia was able to fund the project; Wachovia was able and intended to fund the settlement agreement; and Wachovia would fund certain requisitions. Preston Lake claims that it failed to seek alternative sources of funding for the project as a result of these misrepresentations and has suffered over $10,000,000 in damages as a result. However, this claim suffers from two fatal flaws.

First, these allegations do not plausibly demonstrate reliance and damage resulting from Wachovia's statements. Preston Lake claims that it spent "approximately $1,000,000 on additional site work and infrastructure" for the development project in reliance on Wachovia's promises of future funding. (Defs.' Am. Countercl. ¶ 26.) But, as counsel for Preston Lake

14

acknowledged during the hearing on this matter, Preston Lake spent these funds for its own benefit, not for the benefit of Wachovia. Similarly, any loan repayments that Preston Lake made after being promised future funding by Wachovia were also made in Preston Lake's self-interest. Preston Lake had an independent duty to repay the money it had already borrowed from Wachovia regardless of Wachovia's failure to fund further loan requests. The fact that Preston Lake continued to make regular loan payments cannot establish the reliance and damage required to support a plausible claim of actual or constructive fraud.

Second, to the extent Wachovia's alleged misrepresentations violated duties owed to Preston Lake by Wachovia, those duties were created by the Loan Agreements and not the common law. Preston Lake has not alleged that Wachovia owed them a common law duty of care apart from their existing contractual relationship. Thus, Preston Lake's remedy, if one exists, lies in contract law, not in tort.

For these reasons, the court finds that Preston Lake has failed to state a plausible claim for actual or constructive fraud. Accordingly, the court grants Wachovia's motion to dismiss Preston Lake's fraud counterclaims.

## V.

Wachovia also moves to dismiss Preston Lake's claims for consequential and punitive damages on the basis of a waiver contained in the Loan Agreements.[8] The court finds that

---

[8] Preston Lake also initially sought injunctive relief to prevent Wachovia from foreclosing on its property. However, Preston Lake has since noted that this request is now moot because Wachovia has not moved to foreclose. (Defs.' Br. in Opp'n to Wachovia's Mot. to Dismiss 51.) Therefore, the court grants Wachovia's unopposed motion to dismiss Preston Lake's request for injunctive relief.

Preston Lake validly waived its rights to seek these types of damages, and therefore dismisses these claims.

Under Virginia law, parties may waive their rights to seek consequential damages. See Comstock Potomac Yard, L.C. v. Balfour Beatty Const., LLC, 694 F. Supp. 2d 468, 488-89 (E.D. Va. 2010). As part of the Loan Agreements, the parties signed a promissory note that provides, in part:

> Each of the parties . . . agrees . . . that in no event shall any party have a remedy of, or be liable to the other for, (1) indirect, special, or consequential damages or (2) punitive or exemplary damages. Each of the parties hereby expressly waives any right or claim to punitive or exemplary damages . . . .

(Pl.'s Mot. to Dismiss Am. Countercl., Ex. 1 at 5.)

The validity of this waiver is not in question.[9] However, Preston Lake claims that the waiver is only effective as to Preston Lake's breach of contract claims, and does not bar Preston Lake from seeking punitive damages relating to its tort claims. However, as noted above, the court grants Wachovia's motion to dismiss those tort claims. Accordingly, the court also grants Wachovia's motion to dismiss Preston Lake's claim for punitive and consequential damages.[10]

---

[9] During the hearing on this matter, Preston Lake's counsel suggested that the waiver did not apply to Preston Lake's attempt to recover lost profits because lost profits do not qualify as "consequential damages." However, lost profit damage claims are considered consequential damages under Virginia law. See NAJLA Assocs. V. William L. Griffith & Co., 253 Va. 83, 87 (1997); R.K. Chevrolet, Inc. v. Hayden, 253 Va. 50, 56 (1997); see also Cancun Adventure Tours, Inc. v. Underwater Designer Co., 862 F.2d 1044, 1049 (4th Cir. 1988) (applying Virginia law). Preston Lake's argument that the lost profits were foreseeable goes to the question of whether lost profits may be awarded (as a form of consequential damages) in a particular case; this inquiry has no bearing on the question of whether lost profits are a form of direct or consequential damages. See Morris v. Mosby, 227 Va. 517, 523-24 (1984).

[10] Wachovia also argues that Preston Lake has waived its right to demand a jury trial. A party's right to a jury trial can be waived by contract so long as that waiver is knowing and intentional. Leasing Serv. Corp. v. Crane, 804 F.2d 828, 832 (4th Cir. 1986). The Loan

16

## VI.

For the reasons stated above, the court denies Wachovia's motion to dismiss as to eight of Preston Lake's nine breach of contract counterclaims,[11] as well as Hine's breach of guaranty agreement claims. However, the court grants Wachovia's motion to dismiss Preston Lake's counterclaim alleging that Wachovia breached an express or implied contractual duty to renew or extend the Loan Agreements,[12] that Wachovia breached fiduciary duties owed to Preston Lake, and that Wachovia committed actual or constructive fraud. The court also grants Wachovia's motion to dismiss Preston Lake's claims for consequential and punitive damages.

ENTER: This 10th day of November, 2010.

UNITED STATES DISTRICT JUDGE

---

Agreements contained a clear waiver of the parties' right to seek a jury trial. (Pl.'s Mot. to Dismiss Am. Countercl., Ex. 1 at 5.) Preston Lake argues that Wachovia has waived the right to enforce this waiver by agreeing to a scheduling order that set the case for a jury trial.

However, the court finds that the mere fact that the court set the case for a jury trial in the court's initial scheduling order does not constitute a waiver of the right to enforce this term of their agreement. Accordingly, the court finds that Wachovia is not estopped from seeking to enforce the waiver. However, despite the parties' waiver of the right to a jury trial, the court notes it reserves the ability to try the issues in this case before an advisory jury pursuant to Rule 39(c)(1) of the Federal Rules of Civil Procedure.

[11] These counterclaims are listed in Paragraph 192(i)-(viii) of the Defendants' Amended Counterclaim.

[12] (See Defs.' Am. Countercl. ¶ 192(ix).)